IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN J. DUFFY,                           06-CR-1579-BR

      Plaintiff,                   OPINION AND ORDER

v.

OREGON GLASS COMPANY,

      Defendant.


CARLA A. ANDERSON
FRANK S. WESSON
Wesson & Anderson
9115 S.W. Oleson Road, Suite 201
Portland, OR 97223
(503) 292-5122

      Attorneys for Plaintiff


1 - OPINION AND ORDER

**WAYNE D. LANDSVERK**
Newcomb, Sabin, Schwartz & Landsverk, LLP
111 S.W. Fifth Avenue, Suite 4040
Portland, OR 97204
(503) 228-8446

   Attorneys for Defendant

**BROWN, Judge.**

   This matter comes before the Court on Defendant's Motion for
Summary Judgment (#21).  For the reasons that follow, the Court
**DENIES** Defendant's Motion as to Plaintiff's Sixth Claim for
breach of contract and **GRANTS** Defendant's Motion as to each of
Plaintiff's remaining claims.


<u>BACKGROUND</u>

   On September 23, 2005, Plaintiff was fired from her position
as Human Resources Director by her supervisor Leon Anderson,
General Manager of Defendant Oregon Glass at its Wilsonville,
Oregon, location.  That day Plaintiff signed a letter that is, in
effect, a general "Separation Agreement" with Defendant in
exchange for $2,000 severance pay, a five-week extension of her
medical insurance coverage, and Anderson's promise to write a
letter of reference for Plaintiff within two weeks of her
termination.  The Agreement reads in part:

     By my signature below and in consideration of
     the offer presented to me by Oregon Glass
     Company, I accept this separation agreement.
     I hereby release and discharge Oregon Glass
     and its officers, directors, employees and

2 - OPINION AND ORDER

> agents, from any and all claims I may have
> against any of them, whether known or
> unknown, relating to my employment by Oregon
> Glass or the termination thereof.

Pursuant to the Agreement, Anderson provided Plaintiff with a reference letter on October 18, 2005.  At Plaintiff's request, Anderson provided another reference letter on April 20, 2006.

On February 24, 2006, Plaintiff filed a claim against Defendant with the Oregon Bureau of Labor and Industries (BOLI) alleging unlawful sex discrimination, age discrimination, hostile work environment, and wrongful discharge in violation of state and federal law.  On March 14, 2006, the Equal Employment Opportunity Commission (EEOC) notified Defendant that Plaintiff's BOLI complaint had been filed concurrently with the EEOC.

On April 3, 2006, BOLI issued a memorandum dismissing Plaintiff's complaint for lack of jurisdiction on the ground that the Agreement between Plaintiff and Defendant barred BOLI's investigation of each of Plaintiff's allegations with the exception of her ADEA complaint.  In consultation with the EEOC, BOLI transferred Plaintiff's ADEA complaint to the EEOC for further investigation.  On April 20, 2006, BOLI issued Plaintiff a notice of right to file a civil lawsuit in state circuit court within ninety days of that date pursuant to Oregon Revised Statute § 659A.880.

On August 4, 2006, EEOC also dismissed Plaintiff's claims on the ground that the EEOC could not conclude "the information

3 - OPINION AND ORDER

obtained establishes violations of the statutes."  EEOC gave
Plaintiff notice of her right to file a civil suit in federal or
state court within ninety days of Plaintiff's receipt of the
notice.  In her Complaint filed in this Court, Plaintiff does not
indicate when she received the EEOC notice.

On November 7, 2006, Plaintiff filed a Complaint in this
Court in which she brought eight claims:  (1) Claim One – sex
discrimination in violation of Title VII of the Civil Rights Act
of 1964, (2) Claim Two – age discrimination in violation of the
Age Discrimination in Employment Act of 1967 (ADEA), (3) Claim
Three – hostile work environment in violation of Title VII,
(4) Claim Four-unlawful retaliation in violation of Oregon
Revised Statute § 659A.030(f), (5) Claim Five – wrongful
discharge under Oregon common law, (6) Claim Six – breach of
contract under Oregon common law, (7) Claim Seven – fraud in the
inducement of the contract under Oregon common law,[1] and (8)
Claim Eight – intentional infliction of emotional distress under
Oregon common law.

On December 14, 2007, Defendant moved for summary judgment
as to all of Plaintiff's claims.  On January 3, 2008, the Court
granted Plaintiff's Motion for Extension of Time to File a
Response to Motion for Summary Judgment and gave Plaintiff until

---

[1] Although Plaintiff does not expressly claim "fraud in the
inducement," the Court so construes her general claim of fraud.

4 - OPINION AND ORDER

February 4, 2008, to file a response.  When Plaintiff did not

file a response, court staff contacted Plaintiff's counsel by

telephone.  Plaintiff's counsel indicated she again intended to

seek leave of Court to file a late response, but she did not do

so.  On February 27, 2008, the Court issued an Order giving

Plaintiff notice that she had until March 3, 2008, to file a

motion for leave to file a late response.  The Court also advised

Plaintiff that if she did not file such a motion, the Court would

consider Defendant's Motion for Summary Judgment fully briefed

and take it under advisement.  Plaintiff did not file such a

motion, and the Court took this matter under advisement on

March 3, 2008.


### STANDARDS

     Federal Rule of Civil Procedure 56©) authorizes summary

judgment if no genuine issue exists regarding any material fact

and the moving party is entitled to judgment as a matter of law.

The moving party must show the absence of an issue of material

fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th

Cir. 2005).  In response to a properly supported motion for

summary judgment, the nonmoving party must go beyond the

pleadings and show there is a genuine issue of material fact for

trial. *Id*.

     An issue of fact is genuine "'if the evidence is such that a

5 - OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

**DISCUSSION**

Defendant moves for summary judgment as to each of Plaintiff's eight claims. Defendant argues Plaintiff's state-law claims are time-barred because they were not filed within the ninety-day statute of limitations that began to run when BOLI issued its right-to-sue notice. Defendant also contends the issues underlying Plaintiff's claims asserted in her Complaint were addressed and agreed to by the parties in the September 23, 2005, Agreement with the exception of Plaintiff's ADEA claim. Finally, Defendant contends it is entitled to summary judgment as to Plaintiff's ADEA claim.

**I.    Plaintiff's state-law claims are time-barred.**

Defendant contends the statute of limitations bars Plaintiff's state-law claims because Plaintiff did not file those claims within ninety days of BOLI's right-to-sue notice. *See* Or. Rev. Stat. §§ 659A.875(2), 659A.880(3). As noted, on April 20, 2006, BOLI issued its notice of Plaintiff's right to file a civil lawsuit based on the allegations in her complaint. Plaintiff, however, did not commence her action in this Court until November 7, 2006, which is more than ninety days from April 20, 2006. Because Plaintiff did not file her claim in the time required under Oregon law, she does not have the right to pursue her state-law claims based on the allegations in her BOLI

7 - OPINION AND ORDER

complaint.  *Id.*  Thus, Plaintiff's Claim Four for unlawful
retaliation, Claim Five for wrongful discharge, and Claim Eight
for intentional infliction of emotional distress are time-barred
because each of these claims arises out of allegations in
Plaintiff's BOLI complaint that Defendant subjected her to
discriminatory and hostile treatment.

**II.  Separation Agreement.**

With the exception of Plaintiff's ADEA claim, Defendant
contends each of Plaintiff's claims is barred by the terms of the
Agreement that Plaintiff and Defendant entered into when
Defendant terminated Plaintiff.  In his Affidavit, Anderson
testifies he and Plaintiff negotiated the Agreement at arms-
length and that he has fully satisfied his obligations under the
Agreement.

In her Complaint, Plaintiff alleges two contract claims
related to the Agreement:  fraud in the inducement of the
contract and breach of contract.  With the exception of her fraud
claim, Plaintiff does not challenge the existence of a contract
between Plaintiff and Defendant but seeks to enforce the contract
against Defendant.  Viewing Plaintiff's Complaint in the light
most favorable to her, Plaintiff alleges Defendant breached two
terms of the Agreement:  (1) Defendant did not provide a timely
letter of reference and (2) Defendant breached his implied
obligation of good faith and fair dealing because Anderson's

8 - OPINION AND ORDER

letter of reference was not sufficiently detailed to be useful
for Plaintiff.

As noted, Defendant contends the Agreement bars each of
Plaintiff's claims with the exception of her ADEA claim on the
ground that the agreement provides Plaintiff "release[s] and
discharge[s] any and all" claims against Defendant "relating in
any way to [Plaintiff's] employment by Oregon Glass or the
termination thereof."  Plaintiff's claims related to the
formation and performance of the Agreement itself, however,
cannot be barred by this provision because it would, in effect,
render the Agreement legally unenforceable.  Thus, the Court
considers Plaintiff's claims for fraud in the inducement and
breach of contract on the merits.

**A.    Validity of the Separation Agreement.**

**1.    The Agreement Generally.**

As noted, Defendant contends the Agreement is valid and
Plaintiff is barred under the Agreement from bringing claims
against Defendant related to her employment and termination with
the exception of her ADEA claim.  Plaintiff, in turn, alleges in
her Complaint that she was "bullied" into signing the Agreement
and accepting severance pay.

The Ninth Circuit has held:  "A general agreement of
Title VII claims does not violate public policy.  To the
contrary, public policy favors voluntary settlement of employment

discrimination claims brought under Title VII." *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 460-61 (9th Cir. 1989)(internal citation and quotation omitted).  The court, however, "must closely scrutinize a waiver of rights under Title VII because of their remedial nature."  *Id.* at 461.  A waiver of civil rights under federal law must be "voluntary, deliberate, and informed."  *Id.* at 462.

The terms of the Agreement clearly and unambiguously provide Plaintiff released and discharged all claims against Defendant relating to her employment and termination.  As noted, Plaintiff was a human-resources professional, well-educated in employment law, and, therefore, well-positioned to understand the provisions of the Agreement.  Anderson also testified Plaintiff created the Agreement herself and had used a similar agreement related to the termination of a sales manager a few months earlier.  Moreover, Plaintiff negotiated for additional consideration for the release of her claims against Defendant; *i.e.*, she secured extended health-insurance coverage and a letter of reference in addition to $2,000 in severance pay.

In addition, Anderson testified Plaintiff contacted him the day after her termination to request that Defendant not oppose Plaintiff's claim for unemployment benefits, and Anderson agreed.

Thus, the totality of these circumstances belies Plaintiff's allegation that she was bullied into signing the Agreement.

10 - OPINION AND ORDER

2.    **Fraud in the Formation of the Agreement.**

In her Seventh Claim, Plaintiff appears to allege Anderson fraudulently induced her to enter into the Agreement by making intentionally false promises that he would provide her with a reference letter within two weeks.

In *Webb v. Clark*, the Oregon Supreme Court sets out the nine elements a party must prove to prevail on a claim of fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

274 Or. 387, 391 (1976).

Anderson testified the Agreement was a valid contract negotiated at arms-length, Plaintiff was an experienced human-resources professional, she drafted the Oregon Glass Agreement, and she successfully negotiated for additional consideration in exchange for her release and discharge of any claims against Defendant upon her termination.

In his Affidavit, Anderson testified he agreed to provide Plaintiff with a reference letter as part of the consideration for Plaintiff's agreement to release and to discharge all claims against Defendant.  Anderson's handwritten notes on the original of the Agreement indicate he agreed to

11 - OPINION AND ORDER

provide Plaintiff with "a written reference letter within two weeks from [September 23, 2005]."  Anderson testified he provided Plaintiff with a letter of reference on October 18, 2005, (which is attached as Exhibit Three to Anderson's Affidavit) in accordance with the Agreement.  At Plaintiff's request for a more detailed letter outlining her duties, Anderson provided Plaintiff with a second reference letter on April 20, 2005.

Beyond the allegations in her Complaint, Plaintiff does not provide any evidence that Anderson falsely stated he would provide a reference letter for her or that he intended Plaintiff to rely on such a false statement when she entered into the Agreement.

On this record, the Court concludes no factual basis exists on which a reasonable juror could find Defendant fraudulently induced Plaintiff to enter into the Agreement and to release and to discharge all claims against Defendant related to her employment and termination.  Moreover, the Court concludes Plaintiff made a voluntary, deliberate, and informed waiver of her rights in the Agreement that she entered into with Defendant. Although the Court concluded Plaintiff's state-law claims for wrongful discharge, retaliation, and intentional infliction of emotional distress are time-barred, the Agreement also precludes Plaintiff from bringing those claims in this Court.

**B.    Breach of the Agreement.**

In Claim Six, Plaintiff alleges Defendant breached the
Agreement because it did not provide her with a timely and
sufficient letter of reference.

A claim for breach of contract accrues when a party to the
agreement does not perform a duty owed to another party. *Kantor
v. Boise Cascade Corp.*, 75 Or. App. 698, 703 (1985). Proof of
damage caused by the defendant's nonperformance is an essential
element of a breach-of-contract claim. *Moini v. Hewes*, 93 Or.
App. 598, 602 (1988).

Contracts include an implied obligation of good faith and
fair dealing "to facilitate performance and enforcement of the
contract when it is consistent with and in furtherance of the
agreed-upon terms of the contract, or where it effectuates the
parties' objectively reasonable expectations under the contract."
*Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 661-62 (2007).

**1.    Timeliness of Reference Letter.**

In her Complaint, Plaintiff contends Defendant breached
the Agreement by failing to provide the agreed-to reference
letter within two weeks of her termination and that she suffered
damages as a result, which included her inability to find full-
time work in human resources.

In the Agreement, Defendant was required to provide a
letter of reference to Plaintiff within two weeks of the date of

the Agreement.  Defendant provided Plaintiff the reference letter
on October 18, 2005, which was over three weeks after execution
of the Agreement.  In its Motion for Summary Judgment, Defendant
does not dispute these facts and does not offer any argument to
defend its delay or to dispute Plaintiff's allegation that she
was damaged by Defendant's breach.

Thus, on this record, the Court concludes a genuine issue of
material fact exists as to whether and to what extent Plaintiff
was damaged by this alleged breach of the Agreement by Defendant.

### 2.    Sufficiency of Reference Letter.

Plaintiff also alleges even though Defendant provided
reference letters, Defendant breached the implied covenant of
good faith and fair dealing because the letters were of little or
no value to Plaintiff.  Plaintiff contends Defendant's initial
reference letter was not sufficient because it only contained her
dates of employment, her job duties, and incorrectly identified
Plaintiff's job title.  Several months later, Plaintiff requested
Anderson to revise the reference letter.  As noted, Anderson
provided Plaintiff with a second reference letter on April 20,
2006, which Anderson testified included a "number" of the changes
suggested by Plaintiff.  Nevertheless, Plaintiff contends
Anderson's letters did not satisfy her "reasonable expectations"
under the Agreement.

Although Defendant did not directly address the breach-

14 - OPINION AND ORDER

of-contract claim in its Memorandum in Support of its Motion for
Summary Judgment, Anderson testified in his Affidavit that he
provided Plaintiff with useful reference letters and that he
satisfied all of Defendant's obligations under the Agreement.

The Agreement required Defendant to provide a "written
letter of reference" and did not elaborate on the contents.
Anderson's initial reference letter included Plaintiff's dates of
employment and her job duties in Defendant's human resources
department.  The reference letter indicates Plaintiff's position
was "HR Generalist" even though Plaintiff was the HR Director.
The initial letter noted Plaintiff "dealt with day-to-day
employee issues and managed employee harassment and workers
compensation insurance claims.  As her supervisor and the General
Manger of Oregon Glass I was informed of the issues that affected
our employees, or could have negative effects upon our company."
In addition, Anderson indicated prospective employers could
contact him directly if further references were needed.

In the second reference letter, Anderson corrected
Plaintiff's job title and provided a few more details regarding
Plaintiff's responsibilities such as her supervisory duties
and her role in developing a safety committee and web-based
timekeeping.

On this record, the Court concludes genuine issues of
material fact exist as to Plaintiff's Claim Six for breach of

15 - OPINION AND ORDER

contract arising from the sufficiency of the reference letters, including what the "objectively reasonable expectations" of the parties were under the Agreement for the letter of reference and whether the reference letters provided by Anderson were sufficient to satisfy the provision of the Agreement. *See Morrow*, 212 Or. App. at 662.

**III. ADEA Claim.**

Plaintiff's Second Claim alleges Defendant terminated Plaintiff because of her age and replaced her with a younger employee in violation of the ADEA. Defendant moves for summary judgment on the ground that Plaintiff has not shown Defendant's decision to terminate Plaintiff was motivated by Plaintiff's age.

ADEA makes it "unlawful for an employer . . . to discharge any individual [who is at least forty years of age] . . . because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). There are two theories of recovery under ADEA: disparate treatment and disparate impact. *Rose v. Wells Fargo Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). A disparate-impact claim "challenges employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 1423 (citations and internal quotations omitted). On the other hand, a disparate-treatment claim under ADEA focuses on the employer's motive underlying the employment decision. *Id.* at

16 - OPINION AND ORDER

1421.  The plaintiff must show the employer treated the plaintiff differently than others similarly situated because of age.  *Id.*

The burden of production on summary judgment shifts during an ADEA case as follows:

> [A] plaintiff must first establish a *prima facie* case of discrimination.  If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision.  Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985), *amended by* 784 F.2d 1407 (1986).

An ADEA claim may only be waived by agreement if the waiver is "knowing and voluntary," and any Agreement must specifically refer to the employee's rights under the ADEA to be valid.  29 U.S.C. § 626(f)(1).  *See Syverson v. Int'l Bus. Mach.*, 472 F.3d 1072, 1074 (9th Cir. 2007).

## A.  Plaintiff's *Prima Facie* Case.

A plaintiff may establish a *prima facie* case of disparate treatment by offering direct evidence of the employer's discriminatory intent.  *Wallis v. J.R. Simplot*, 26 F.3d 885, 889 (9th Cir. 1994).  Absent direct evidence, a plaintiff may also establish a *prima facie* case through a presumption of discrimination that arises out of proof of four factors:  the

17 - OPINION AND ORDER

plaintiff was a member of a protected class (*i.e.*, age forty to seventy), the plaintiff was performing her job in a satisfactory manner, the plaintiff was discharged, and the plaintiff was replaced by a substantially younger employee with equal or inferior qualifications. *Rose*, 902 F.2d at 1421.

Beyond the allegations in her Complaint, Plaintiff does not offer any direct evidence of Defendant's discriminatory intent. When taken in the light most favorable to Plaintiff, however, Plaintiff's alleged facts are sufficient to establish a *prima facie* case of age discrimination: Plaintiff was over forty and under seventy at all relevant times; Plaintiff was performing her duties as HR Director satisfactorily; Plaintiff was terminated; and Defendant replaced Plaintiff with candidate who was "clearly under forty" and who was being interviewed to be Plaintiff's subordinate. *See id.* Because Plaintiff established a *prima facie* case, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for terminating Plaintiff. *See Lowe*, 775 F.2d at 1009.

**B.    Defendant's Motion for Summary Judgment.**

As noted, Defendant concedes the Agreement does not contain sufficiently specific language to constitute a knowing and voluntary waiver of Plaintiff's ADEA claim. In its Motion for Summary Judgment, however, Defendant contends Plaintiff's age-discrimination claim fails on the merits. In Anderson's

Affidavit, he testified he terminated Plaintiff's employment "for unsatisfactory job performance. . . . [including] her failure to hire employees as necessary and her inappropriate handling of the recruitment and hire of a Human Resources assistant.  Ms. Duffy's age had nothing to do with the decision."  Defendant, therefore, articulated a legitimate, nondiscriminatory reason for terminating Plaintiff based on her work performance.

To defeat Defendant's Motion for Summary Judgment, Plaintiff must counter Defendant's reason for terminating her employment by "specific" and "substantial" proof that Defendant's proffered reason was a pretext for unlawful discrimination. *Wallis*, 26 F.3d at 890 ("A plaintiff cannot defeat summary judgment simply by making a *prima facie* case.").  As noted, Plaintiff did not file a response to Defendant's Motion, and, therefore, Plaintiff has not met her burden to provide evidence beyond the allegations in her Complaint that establish Defendant had a discriminatory motive.

The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's Claim Two.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (#21) as to Plaintiff's Claim Six for breach of contract and **GRANTS** Defendant's Motion as to each of Plaintiff's

19 - OPINION AND ORDER

remaining claims.

IT IS SO ORDERED.

DATED this _29th__ day of April, 2008.


                                    __/s/ Anna J. Brown__
                                    ANNA J. BROWN
                                    United States District Judge


20 - OPINION AND ORDER